## DAVIS v. N. Y., LAKE ERIE & WESTERN R. R. CO.

*Buffalo Superior Court ; January Term, 1886.*

1. *Pleading negligence.*] Under an allegation that the locomotive by the explosion of which plaintiff was injured was defective, by reason of which he suffered the injuries complained of, evidence that the coal furnished was unfit and could not be used with safety upon this locomotive, is not competent, although it appears also that by a different construction such unfit coal might have been safely used, and that good coal would have been used on this locomotive with safety.

2. *The same.*] The particular in which the defendants were guilty of negligence of its duty toward the plaintiff is necessarily alleged, and defendant has a right to rely upon such particular as the only one involved in the issue to be tried.*

Appeal from a judgment and order refusing a new trial.

Plaintiff sued for damages for injuries suffered by him while in the defendants' employment as locomotive engineer.

The complaint alleged that the defendant so negligently, carelessly and unskillfully conducted its business that it failed

---

* See note on Allegation and Proof of Negligence, at p. 236 of this vol.

to supply the plaintiff with suitable and safe appliances for the conduct of its business, and failed to keep the same in repair, as was proper and necessary to do, to secure the safety of said plaintiff, "that said defendant was negligent and careless in that behalf as alleged, in this, that while the said plaintiff was engaged in the discharge of his duties as engineer, the defendant failed to furnish a safe and proper locomotive engine with which to do said work, but that the said locomotive so furnished plaintiff was out of repair, defective, insecure and dangerous to persons upon it . . by reason of which defective condition and lack of repair, the said plaintiff, while engaged in the performance of his duty was hurled violently out of the window of the cab of the said locomotive by an explosion of gas in the firebox of said locomotive, upon the ground, and received thereby severe and permanent injuries."

The plaintiff testified on the trial that while he was at work with his engine, hauling a train of freight cars, his engine "blew out and got stopped up; she blew fire, gas and smoke out into the cab, and blew me out on to the ground," and that thereby his leg was broken, and he suffered the injuries complained of. He further testified that the netting over the smoke-stack of the engine got stopped up; and that caused the engine to blow out; that he had not examined the netting, but that he knew that it was liable to get stopped up, and that the netting was used upon the smoke-stack of all engines to prevent fire and sparks from escaping, and burning property along the line of the railroad.

He did not testify to any defect in the engine, or any want of repair thereof which caused the injury.

After proving the nature and extent of his injuries, the plaintiff called as a witness, one Stephens, who, at the time of the accident, was employed by defendants as an engineer upon one of its locomotives, and who, having testified that he was familiar with the kind of coal in use by defendants at the time in question, was asked by plaintiff's counsel what kind of coal it was.

The defendant's counsel objected to the question as irrelevant and immaterial, and because the complaint contained no allegation that the fuel furnished for use by plaintiff on his engine was improper, or of a defective quality. The objections were overruled, and the witness was allowed to testify to the quality and kind of coal used on plaintiff's engine.

He was asked by plaintiff's counsel how the coal was, as to being screened or dirty, and mixed with foreign substances. Defendant's counsel objected to the question as immaterial and irrelevant, and because the complaint contained no allegation that the fuel furnished for use on plaintiff's locomotive was improper, or of defective quality. The objection was overruled, and the witness answered that the coal was not screened; that the netting used on the engine had the same sized meshes as the netting in general use on defendants' locomotives; that he had had experience of the danger of using that kind of netting with that kind of coal. He further testified, under similar objection by defendant's counsel, that the netting that was used on defendants' road, in connection with the kind of coal that was used, was not a safe and suitable instrumentality to do business with upon the engine used by plaintiff; that if a larger netting was used with that kind of coal, there would be no difficulty; and that if with the netting used on that engine a better quality of coal were used, there would be no difficulty.

Several other witnesses called by the plaintiff, who had been employed by defendant upon its locomotives, were allowed to testify, under defendant's objection, that the quality of the coal used on defendant's engine was defective and bad, unsafe and unfit for use with the netting used on defendant's engines; though they also testified that it was a standard netting in use upon all the defendants' engines, and on those of other railroad companies, and that it was a safe and proper netting if a good quality of coal was used upon the engine.

No testimony was given that would warrant the conclusion that there was any defect in the netting of the engine

run by plaintiff if the coal furnished him for use thereon had been of good quality and fit for such use.

*At the trial*, plaintiff had a verdict, and judgment having been entered, an order denying a motion for a new trial having been also made, defendants appealed.

SMITH, Ch. J.—[After stating the facts.] It is entirely clear to my mind that the court erred in permitting the plaintiff to prove that the coal furnished for use upon his engine was of bad quality, and unsafe and unfit for such use. As we have seen, the complaint contained no allegation touching the kind or quality of fuel furnished plaintiff. On the contrary, the complaint alleges that the engine furnished to plaintiff was out of repair, defective, insecure, and dangerous, by reason of which the plaintiff suffered the injuries complained of. On the trial the plaintiff attempted to prove that the netting upon his engine was defective, insecure and dangerous. He could only prove that when coal not screened, dirty, and of a kind and quality unfit for use was employed, the netting was unsafe and defective, but his own witnesses testified that the netting was safe and proper for use with a good quality of coal. When, therefore, the court allowed the plaintiff to abandon the charge in the complaint, that the engine was defective and unsafe, and to prove instead that the fuel used on the engine was of a bad quality, that it could not be used with safety upon an engine properly constructed and in good condition, he compelled the defendant to meet an issue not made by the pleadings, and which it did not come into court to try; and the jury were allowed by the admission of this improper evidence to find a verdict for the plaintiff, because the fuel furnished him was not of good quality, but was unfit and unsafe for use upon his engine.

If the complaint had not specified in what particular the defendants were guilty of negligence, or failure to do its duty towards the plaintiff, it would have been deemed defective, and the plaintiff could have been compelled to

Davis *v.* N. Y., Lake Erie & Western R. R. Co.

state in his complaint specifically the negligence or neglect of duty which caused the injury for which he sued. And in stating the facts requisite to make his complaint sufficient in this respect, he was bound to state them truly, so that the defendants might know with what fault or wrong they were charged, and come to the trial prepared to meet the charge. The very object of written pleadings is to frame the issues so that the parties may know what questions are to be tried, and make preparation therefor; and this purpose is frustrated and manifest injustice is done if, on the trial, the party is allowed to abandon the issues deliberately framed, and substitute other and different ones. The defendants, no doubt, were bound to furnish the plaintiff a safe and proper kind of coal to use upon his engine; and had the complaint contained proper allegations on that subject, either originally or by proper amendments, a verdict based upon those allegations, and suitable proofs supporting them, would not be disturbed.

I have not considered other questions made by defendant in this case, because the error of the court in permitting evidence to be given to support an issue first raised on the trial, renders it necessary to grant a new trial, upon which, with amended pleadings, or otherwise, those questions may not arise.

The judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event.